Jones versus Gross and Longmore. Good morning Your Honor. May it please the Court. Chris Longmore here on behalf of the appellant Nicholas Jones. The facts of this case are set out I think pretty well in the in the record Your Honors but on the night of October 3rd 2010 a lot of what happened initially is not a dispute between the parties. There was a officer Gross who was an officer with was eating some food at a Wendy's where an individual came up warned him that there was a robbery occurring across the street on North Avenue in Baltimore. He left the Wendy's in his car went over to the family dollar and he looked inside the doors were I believe locked but he looked in and he could see a robbery in process with three individuals that he identified as suspects. Those three individuals at some point came out and officer Gross had backed up approximately five to ten feet at that point and all of that Your Honors is not really in dispute. When they came out the three suspects one of them was my client Mr. Jones the appellant in this case. Another one of those that was not Mr. Jones was holding one of the employees with what appeared to be a weapon. There's some dispute over what type of weapon that was but but he appeared to be holding that. So those facts essentially are not. To the employees head? That that's what the the testimony was. That's what it was? It was Your Honor. That was testified by officer Gross I believe at his deposition that's in the record. What then what happened became in significant dispute and that's really what the issues are before this court and I'll address those in the addressing of the legal standards that are there. Our arguments as we set forth in the one argument that has two parts. One is that the district court below applied the incorrect legal standard to the motion for summary judgment that was granted and that we have appealed from here today. As the the court can see from the memorandum that was issued with the court's order there were some statements in there that were clearly incorrect as to what the correct legal standard is. That order said that a common standard just to get that out of the way isn't the standard basically reasonableness based on the circumstances in each case? It is. It's whether the the officer based on a reasonableness standard. That's that's correct Your Honor. Whether that comes out of both Graham and Scott versus Harrison. I believe that is. So that's standard. We believe the district court incorrectly applied it and that this court should reverse and remand for that reason only so that it can apply the correct standard. Applying that correct standard based on a reasonableness standard of whether the officer there is a significant threat to that officer or any other individuals nearby. We believe there are very significant disputes of genuine or genuine disputes of material facts in this case. Why don't we leave aside the facts. I think the biggest dispute is whether the gun was fired and but let's set that aside so that you basically have a triangle of the three guys with a girl hostage and the officer instructs the person with a gun to put the gun down, drop the weapon multiple times and then at some point they threw the girl down and started running and the officer filed two or three shots at him and one of them got jealous and he he ended up on the ground 20 feet from that place. Does that sound right? We would dispute some of those facts are the fact that the three individuals who are standing there while officer Gross yelled to drop the weapon and we're all standing together when that happened. My client's testimony was that immediately exiting the door of the family dollar, he immediately turned to his left and ran down the street without hesitation. There is no testimony in his deposition and we've cited this in the record as well and we cited it in our opposition to the motion for summary judgment. That we believe is one of the clear disputes of material fact of whether at the time officer Gross shot fired his shots, whether my client was standing in front of him with the other suspect. I thought your client testified. They all three came out with the girl in front, three behind. They all came out together and then he testified that he immediately took off running. They all came out of the door that way but then he immediately ran when he came out is what his testimony was at his deposition. And he made some colorful comments about how quick he was running and I can certainly highlight that in my rebuttal and pull it from the record. So we believe that that is one of the significant disputes is that he was saying that he was running. And tell me why you think that's material? Well your honor we believe that that sets it up so it's a difference between the types of facts that you see in the Tennessee v Gardner case where the where the main issue in that was whether it's constitutionally reasonable to shoot a fleeing suspect that poses no harm to anyone or whether it was a situation where the officer was shooting at three suspects that the officer wasn't sure was armed and posed a danger. If you believe my client's version of the facts, he immediately took off running when the situation arose when they came out of the family dollar. He was running away. It was almost the full distance of the shots whizzing by his ears. He heard at least two of them. He testified during his deposition that cited in the testament and then then a shot struck him in the back and his clavicle and he fell to the ground. We believe that his version supports the argument that he was fleeing the scene of a crime. Certainly I'm not here to justify what he was doing there that night and he's paying the price. He's still incarcerated at this time for that crime. But once the officer arose, he began to run away and he began to flee. And the language in Gardner and also the language that we cited in Henry v. Purnell makes it clear that even if a suspect is running away, even if they're going to get away, deadly force is not allowable in that instance unless the officer believes that he is in immediate danger or others or others. And that's correct. Your Honor, there was the one employee of the store that was at the front door. My client got shot as he had run a significant distance. He ended up only 20 feet away. He ran some after he said he didn't feel the bullet hit him and then he went down. Your Honor, I believe that I disagree with that with the facts in that the officer testified. What page is his testimony on? Your Honor, I can certainly pull that. I don't have the page number with me. Just the general page. I was just trying to find his testimony. Okay, go ahead. What the officer testified was that he shot the appellant. The appellant then ran for a while and fell. What my client testified to during his deposition was that he was running away and he immediately fell upon being shot. And that he was running away and had his back turned to the officer when the shots were fired. And that's really the way he was. Had his back to the officer. Well, I think that's supported. The real question I suspect is what is the... You have this big, quick developing circumstance where they held somebody hostage and they have a gun. One of them has a gun. The other two, they don't know quite... He didn't know quite what they had. They had something in their hands. It would turn out not to be a gun. But they pushed the girl down and broke. The officer says there was a shot fired, but set that aside, you still have three guys who were kidnapping and hostage holding and robbing a place. One of which was armed and breaking up and he fires a shot at him. That's certainly correct, your honor. The facts were that they were in the course of that crime when this happened and my client pled guilty to that crime. But we believe it is significant and we, in the case of Streeter v. Wilson, which is unreported, but it cited the case of Waterman v. Vuitton, which is cited in our brief, does talk about that you can segment events when you look at this analysis, when you apply that reasonableness standard. And we believe that the instant that they came out of the store, when Officer Gross saw the store employee there, thought there may be a weapon there, at that point it very well may have been reasonable. We probably wouldn't be here today if he shot my client immediately when he came out of the store. What we believe happened is that he was running away and he got shot in the back and that's what my client testified to during his deposition. And if you apply that standard from Streeter and Waterman, that you do look at the instances differently. And there was one where an officer thought somebody had a knife, he shot him twice and paused and then shot him again and the court split that instance in the Waterman case, even though it's unreported. At best, you are arguing there's a jury question here. That's correct. That as a matter of law, it would have to be determined this way. And your evidence, at least in the light most favorable to your client, would be that he turned and started running away. Inconsistency, you point to, is that Gross says I shot him in the chest, whereas the evidence is clear from the medical side and the judge may define that he was shot in the back and that he was 20 feet away when that occurred. The question being, did he still pose a risk to the officer? There have been courts who have ruled that if a crime, a violent crime is occurring and the person is armed and dangerous, that in itself may be a basis to believe for the officers to form an objective, reasonable belief. And in this instance, the time period is relatively short between the time that at least one of the suspects is holding what appears to be a gun. The purpose of indicates that the officer could be objectively reasonable in fear. He doesn't know it's a BB gun. But your point of the BB gun is that the officer said that there was a flash of the muzzle and a BB gun wouldn't give you a flash of the muzzle in most instances. That's correct. So I guess, you know, ultimately where we are is left to decide, is there a jury question? What really puzzles me, it doesn't look like the trial judge dealt with any of this stuff. His order, I don't know of any law that supports what he says in this order here, that is that a robbery is not complete until the loot obtained on the robbery is divided up. And because the robber was not subdued, then you can shoot him. That appears to be the standard the court applied. And that was... Where does it come from? I don't know of a case that says that he doesn't cite anything in this order. And it's difficult for the appellant to understand how that statement could be made in a memorandum. But we're not limited to this order. That's correct. And that's why we've argued the other facts that are there. I mean, we know that this may be a difficult case to prove to a jury, but we believe that there are sufficient material facts that are in dispute, including the credibility of the defendant. We saw a muzzle flash. If you believe my client's version of the stories, that it was not only a BB gun, but an inoperable BB gun, because it was so old and it didn't work. And that's cited in the brief. Probably the most damning thing to the officer's credibility is saying he shot him in the chest. In fact, every bit of the evidence, including the medical evidence and the judge's facts, indicate he shot him in the back. We believe that too. And the testimony from the deposition is cited in our brief, and it's in the appendix as well, where I repeatedly asked the officer, was he facing you when you shot him? And he repeatedly said he was. And we believe that that contradicts the physical evidence. Another aspect of this is you've got three individuals. One has a gun, appears to be at the head of someone, actually pushes this person toward the officer, who then has to react. And within seconds, the other one's running away. There's nothing there that says that other person doesn't have a gun. He hasn't seen a gun on him. But yet, he's in the company of a crime in which there is a gun. Not just being a gun, he's actually got it to the head of the person. And then the person is pushed to him. And again, none of this is what the trial judge is talking about here. I'm just at a loss of where the trial judge is on this thing, but I'm dealing with it in terms of what the facts are. And I have some rebuttal. I'm happy to address it then. I see my light's on for now. Thank you. Thank you. May it please the court. Good morning, your honors. Tell me from the outset, are you going to defend the judge's order here and the way it's written here? Because I want to hear some cases that support what he's got in his order. Basically, the order says a robbery is not complete until the robbery of robbers successfully flea the scene and divide up the loot during the robbery. Because that hadn't happened, and he hadn't been subdued. He says, of course, when a robber is subdued, there's no justification. But that hadn't happened here. Is this the basis, or are you going to rely on the other rule that you don't have to go on what the judge says? Your honor, I am relying on that. I'm also relying on Graham v. Connor, which is... Do you agree with me that this is flat wrong right here? I believe that what Judge Motz was trying to allude to was that there was... You think that's flat wrong. What this order here looks to me to be flat wrong. I do believe that that is not the standard. I do agree that that is not the standard. I think you've got to say something on this order. This order is just so wrong. I've never seen anything so wrong in terms of excessive force cases. There may be another basis that I'd like to hear. Yes. That is an assumption. There is no assumption on the risk in excessive force cases. It is Graham v. Connor that is controlling. Perhaps the only... Why don't we send it back to the trial judge and tell him to get it right with the law on it? Why don't we tell him... Because it's so wrong. We can look at the facts. We'll sort through it. We're hearing these inconsistencies. It is an inconsistency that Gross said he shot him in the chest, when in fact the medical evidence, even the judge's order, and the defendant says no, shot him in the back. And it seems to be an inconsistency, at least if you look at a life of favor, if it was a BB gun, he wouldn't have seen a muzzle flash. And so there is some inconsistency here. I'm not saying it couldn't be resolved. Why wouldn't we just send this back to the trial judge and say, articulate this under the proper standard, as Niemeyer alluded to earlier, which would be the reasonable officer. Yes, Your Honor. I don't believe that that's even necessary. I do believe that this court, as you stated, does have the authority to rule on any basis. You do not need to stand by what Judge Mott said. Well, we review judgments. We don't review opinions. So what we're affirming is the judgment. Yes. Although it would certainly seem to call for some commentary about how we could have been better served. I do believe that, at best, Judge Mott was referring to... We can't have Judge Mott even do anything except send it up to us, and we'll go through the evidence and review it. I kind of like the trial judge to do the job in light of the law that exists. I'm not saying there isn't another way to do it, but I'm just saying this... I've just never seen anything like this. I believe that, at best, Judge Mott was trying to describe what Officer Gross was seeing, and that he was seeing an ongoing conspiracy. What he was seeing is a crime being committed by three individuals. They were acting as agents for each other. So what one man was doing was imputed onto the other man, and I believe that's where he was saying that the act was not completed until the loop was divided. What he was trying to say is that perhaps this was an ongoing conspiracy, and what we need to look at is the facts. And that conspiracy continues until the loop is divided? No, I do not believe that that is actually... I think that that could be when it ends. It continues until they successfully flee? I believe it continues when they are no longer together, no longer acting in concert. It continues until they're subdued? I believe when they're no longer acting in concert with each other. At this point, what we have in the facts of this case is three men using a human as basically a shield. There is what appears to be, and Mr. Jones actually admits that Officer Gross could believe it was a gun, so whether or not it's real or fake, he does believe that Officer Gross reasonably believed it was real. It was a gun? But if his statement that it was a BB gun, then Gross would be incorrect in saying it was a flash. Your Honor, but that actually... Case law does provide for mistakes by an officer in a tense situation. It did provide for a mistake that I shot him in the chest when, in fact, you shot him in the back. I do believe that he states that the individuals were running towards him.  Yes, but what he does say is everyone was moving. It's no dispute that there was constant movement. Everyone agrees, including Mr. Jones, that he never stood still. So what... It's a different testimony to say that in his disenlightenment, those people were dependent, jury-type thing, possibly he's trying to create here. There's a different statement that as I was running away, I heard two or three bullets whiz by my head. Then I was shot in the back as opposed to, well, they pushed the blade into me and I shot it in the chest. That's a different statement. I believe that what Mr. Jones actually says, though, is that it's, quote, within seconds. So he actually admits that he is, his words are pressed up against the co-defendant that has a gun to a person's head, a hostage.  It's obvious then that everyone else in the area, we know that there was... There's no clear evidence that a jury could find that, in fact, it was reasonable. But the question is, is there evidence here from which a jury could determine, no, it wasn't reasonable for a person who's running away, who you do not, have not seen a gun on at all, that particular person is running away and you shoot at him. And when he's 20 feet away, he's been hit in the back. I think the evidence, actually, though, what we need to focus on, pursuant to Graham, is the moment that the force was used. And that moment is not in dispute. It's not what the injury was ultimately. It's not what the consequence was of the force. It's at that moment that force was used. And at the moment force was used, it was within seconds, which is actually Mr. Jones' own words, within seconds of three masked men running out of an active armed robbery using a human as a shield with a gun to their head. The moment the force was used, the question is, does he pose a danger? And if the evidence shows he's running away, he's 20 feet away, does he pose a danger? I don't know. I know this happens in the city, and so I don't know if there are other people around. I mean, the evidence may be there, and it could develop to be there. That's why I say, why wouldn't we send this back to Judge Moss to develop this under the standard that's here? Because it's a fact that we just don't know. We don't know how many people are standing around. We don't know the actual distance. We have the allegation here. There is evidence that there were three individuals in the store. There is evidence that there was a hostage. There's also evidence that the officer had called for backup. So we do know all of that. We do know that there were others. And we know that, at the very least, the hostage was in danger and the officer was in danger. Mr. Jones saying he fell 20 feet, while that is not very far away, he also admits what I think is more important, that it was within seconds. And, therefore, that's immediately upon leaving the threshold. I do believe that, again, the standard here is Graham versus Connor. We also have to look at the fact and the preceding cases, such as Anderson versus Russell, that does allow for an officer to use force, even if the individual is not armed. So that is not actually a necessary fact. It is not material that Mr. Jones himself did not have any type of gun on him. At this moment, when the force was used, the three individuals were acting in concert with each other. They were actively fleeing together. And it was within seconds of exiting a threshold that Mr. Jones turned. At that time, we know that there were multiple shots fired. Officer Gross does say that they were facing him. But as everyone is moving, Mr. Jones obviously turns. That's not in dispute, again, that one of the bullets did hit him in the back. But we do know that it was all within seconds. We also know that, in Graham, it states that in circumstances that are tense, uncertain, and rapidly evolving, officers do make split-second decisions. And that is what we have here. We have a split-second decision by an officer who is faced with three masked men in the rain, in the dark, with a gun to a hostage's head. So there is, as a matter of law, it is objectively reasonable that that officer used force at the moment that he used force. And pursuant to the law, regardless of what Judge Motz's order says, again, which I believe was alluding to the conspiracy that was ongoing. I was hoping you wouldn't keep defending that order. Again, I'm not defending that. I believe at best that's what he was alluding to, is the fact that there was a conspiracy going. It is very clear, though, that under the controlling law, which is Graham versus Connor, that there was an objectively reasonable action done by Officer Gross. And with the preceding cases as well, Anderson v. Russell is very important. Opposing counsel refers to cases where officers admit they did not believe they were in any harm. Specifically, Henry v. Parnell and Tennessee v. Garner. But you seem to allude to the per se rule. So what if he was climbing a fence like the defendant was in Garner? I believe that would completely change the facts here. I believe that would be different because here we have different facts when we have three individuals pressed up against each other, actively fleeing with a human hostage and within seconds. I mean, it couldn't go your way. The question is, is there a reasonable jury to find this different? That's the only question here. I mean, what you argue is very reasonable. The question is, is there not a reasonable side here that a person who is actually running away does not seem to have a gun. He has two or three shots, maybe a shot, four shots, I'm processing it, that a jury couldn't say, wait a minute, you didn't have to shoot this individual. They are actually running away. So there's no danger to you or to others. Because we don't know who else is out there. That's the only reason I say that. I do believe that the case law says that this is a matter of law, that it is something, again, referring to Anderson versus. Are we on an immunity standard? Is this immunity? Yes, the officer does, is afforded. The question is whether in these circumstances the reasonable officer would have believed he was violating the Constitution in the way he conducted himself. And this officer, these facts go to support that an objectively reasonable officer in his shoes would not have believed that he was violating the Constitution. He was faced with imminent danger to himself and the hostage at the very least, also knowing that there were other individuals in the family dollar at the time and that he had already called for backup. So I believe that we need to only look at the facts as they are right now and what we have presented that are undisputed. Nicholas Jones does admit that they were masked men running out together as one unit with a human hostage and a gun to her head. And as a matter of law, this was an objectively reasonable action, and the case law does support that. Does your Honor have any other questions? All right. Thank you, Mr. Carson. Mr. Longhorn. Thank you, Your Honor. To clarify a couple of points. One is that Judge Niemeyer, you had asked about where the testimony of Mr. Jones was. I believe it's at A-150. I found it since then. Thanks. I appreciate it. Another statement was made during my questioning about whether or not the officer had seen something in the hands of the other two that did not have this be begun. I direct the Court's attention to A-141 to A-142, where Officer Gross expressly testified during his deposition that he never saw anything in the hands of the other two individuals, one of which is Mr. Jones in this case. So I think the facts are undisputed that at no point did Officer Jones think or see that my client had any weapon in his hand when this occurred. Certainly, someone doesn't have to actually have a weapon in order for an officer to reasonably be concerned with his safety or the safety of others. Or the safety of others, right. It seems to me that the stronger argument is the possibility, given the facts that there was more than one gun and that more than one person was running away, the person who was running away might pose a threat to others, which is kind of a split-second determination. That may be, Your Honor. I would note that in the record. Well, I was actually just reading from Garner, actually. Right. And that can be, Your Honor. I would note that the facts of this case, there is nothing in the record to suggest that there were any other individuals outside of the Family Dollar Store that night other than the three suspects, the officer and the employee. I suspect what you're suggesting and the real question is what is the message we're giving to police officers, but you're suggesting that in this circumstance, the officer should have conducted a sufficient analysis to determine whether his use of force is reasonable. And then after the fact, the citizens in the community saying, why didn't you stop these three guys? They were armed and dangerous. They were hostage takers, kidnappers, robbers, and you didn't stop them. They're out there. They're still a danger to the community. It seems to me that these are pretty tough. And the whole reason for the immunity is to give the officers some protection when they're making these fast decisions, so long as they don't know they're violating it. If they're deliberately violating the Constitution, they should know it. That's one thing. But if they're trying to do their job and do it in a way that you can criticize it after the fact, that's almost not fair. Well, Your Honor, I would – a couple of points on that. I think Tennessee v. Gardner is very instructive on those. Well, yeah, I know the standard. I know the standard, but my point is that the whole purpose of qualified immunity was to give the officers some protection in the carrying out their jobs in a level of good faith. And it doesn't require perfection in their results or in the way they do it. What it requires is some good faith in respect to the notion that they're not deliberately violating the Constitution. And this man is facing a hostage situation with three people, one at least who is armed, or maybe all three are armed, a girl whose life is at risk. They break up, and at one point even Jones says, we're all running this direction, and he fires two or three shots and gets Jones. You want to look the officer in the face and say he didn't do his job right? Well, Your Honor, if he was shooting my client because he was running away, then yes, I believe Gardner supports that. And if his – The reason you want to go with that is because I think everything Judge Niemeyer alluded to is a true nice statement in terms of the policy and even the law in that instance. But the issue here is whether there is an issue for the jury to decide that under these facts, this was excessive because this individual, the facts show conclusively he was running away, he was shot in the back at a time when no one had seen him with a gun. And it may well be that the jury could say, oh no, he's with this whole group of other people there and there's other people around, it could happen. But the question is do we decide it as a matter of law? That's all the question is here. It's not a question of whether we're going to make a decision whether the officer can do this or not. It's not us that's doing it. We need to let the jury make that decision based upon the facts. But actually that's not the question here because the question here is in a qualified immunity lens, the question is whether the officer made a bad guess in a gray area or whether the officer knew he was violating clearly established law. And I think it's whether the officer had an objective belief that the suspect that he shot posed a danger to himself or others. So it's not, that's the standard that the courts have given us to apply. And we believe that a jury could see it two different ways. And one of the things- How do we handle the notion that immunity is supposed to protect the officer from having to go through a trial and the discovery? In other words, you look at it from the officer's point of view and accept the facts. Now, if the disputed facts from the officer's point of view would be an either-or situation, then you might have to let it go. But usually you take the officer's point of view. In this case, you could discount the facts on which there's a clear dispute, mainly whether the fellow's fired a gun or not. But I don't know if that changes the situation, whether the officer was doing the right thing as an officer. He's trying to stop this trio who are as much of a danger as we can face in the streets. I mean, somebody who's willing to take somebody hostage and use a gun to the head and go in to rob a place and then use her as a human shield, this is not, these aren't, this isn't a playground. I certainly understand your point. And I guess our response would be that the qualified immunity standards in our belief, and we'd assert this position, are not necessarily to allow officers to avoid a trial and be granted summary judgment when there's a dispute of facts. It is a defense that they're allowed to raise. But at this point in the proceeding, when there are facts in dispute, we believe that the jury should hear it. And I'll note that one of the main arguments of the appellee is that there's no dispute in fact over that moment the force was used. There is. The officer said he returned fire. That's why he shot. He said that in his deposition. My client said he was running away and that there was no fire aimed at him. We believe that that's a clear dispute about that moment that they claim is so critical. So for that reason, Your Honors, we'd ask that the Court reverse and remand this back for further proceedings consistent with the clearly applicable law. All right. Thank you. We'll adjourn court for the day and then come down and greet counsel. This Honorable Court stands adjourned until tomorrow morning. Dossier, United States. This Honorable Court.
judges: Paul V. Niemeyer, Allyson K. Duncan, James A. Wynn, Jr.